**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOLLY YENCHA, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | |
| *v.* | |
| ZeoBIT LLC, a California limited liability company, | |
| *Defendant.* | |

<u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Holly Yencha ("Yencha") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant ZeoBIT LLC ("ZeoBIT") seeking relief for injuries that it caused to her and a putative class of similarly situated individuals through its deceptive design, marketing, and sale of its software. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.     ZeoBIT develops software, called MacKeeper, that it claims enhances a Macintosh computer's ("Mac") speed, performance, and security. MacKeeper does this, says ZeoBIT, by detecting and eliminating harmful errors, as well as security and privacy threats.

2.     Unfortunately, as described more fully herein, ZeoBIT uses a common deceptive scheme to trick consumers into purchasing and continuing to use its MacKeeper software, which ultimately fails to deliver the utility that ZeoBIT promises.

3.     On its websites and in paid online advertisements, ZeoBIT makes specific

representations about MacKeeper's ability to remove problems that cause Macs to run slowly, pose security risks, and otherwise negatively impact a computer's operations. To demonstrate MacKeeper's alleged utility, ZeoBIT offers consumers the ability to download a free "15-day trial" version of the software.

4.      Once installed, MacKeeper prompts the user to conduct a diagnostic scan. This scan purportedly detects errors that lead to the problems identified in ZeoBIT's marketing materials (*i.e.*, performance issues, security and privacy threats)—problems that MacKeeper is supposedly designed to fix.

5.      Upon completion of the scan, MacKeeper invariably reports in alarmist fashion (using both graphics and text) that thousands of detected "issues" are causing the Mac to be in "Critical" condition. The trial version of MacKeeper will "fix" a limited number of the issues, but the consumer is encouraged to purchase (typically at a cost of $39.95) the full, registered version of the software to fully repair the computer.

6.      Contrary to ZeoBIT's marketing and in-software report, however, neither the free trial nor the full registered versions of MacKeeper *perform any credible diagnostic testing* of a Mac. Instead, ZeoBIT intentionally designed MacKeeper to invariably and ominously report that a user's Mac needs repair and is at-risk due to harmful (but fabricated) errors, privacy threats, and other computer problems, regardless of the computer's actual condition.

7.      Average consumers generally lack the requisite technical expertise to understand MacKeeper's underlying functionality, and thus trust ZeoBIT to honestly and accurately describe the software's functional capabilities and to identify and remove harmful errors from their Macs as promised. ZeoBIT betrayed that trust, and as a result, thousands of consumers have been (and continue to be) duped into buying and continuing to use MacKeeper.

## PARTIES

8.      Plaintiff Holly Yencha is a natural person and resident of the Commonwealth of Pennsylvania.

9.      Defendant ZeoBIT LLC is a limited liability company existing under the laws of the State of California, with its headquarters and principal place of business located at 440 North Wolf Road, Sunnyvale, California 94085. Defendant conducts business throughout the Commonwealth of Pennsylvania, this District, and the United States.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) at least one Class member is a citizen of a different state than Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over ZeoBIT because it conducts significant business transactions in this District, solicits consumers in this District, and because the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts significant business transactions in this District, solicits consumers in this District, and because the improper conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District (*i.e.*, Plaintiff purchased the software at issue in this District). Venue is additionally proper because Plaintiff resides in this District.

## FACTUAL BACKGROUND

### I.  An Overview of ZeoBIT.

13.     ZeoBIT is a private company that develops so-called "utility software"—that is, software designed to improve a computer's performance in some respect. ZeoBIT has quickly achieved success in the utility software industry with its flagship product, MacKeeper, one of the first utility software tools developed specifically for Macs.

14.     On its website, ZeoBIT claims that it has spent "years" developing MacKeeper, and that the software is "an essential tool for your Mac . . . [and] an easy way to manage routine tasks and keep your Mac secured, clean and running fast!"[1] As demonstrated below, however, an examination of the software reveals that these statements are unsubstantiated.

### II.  ZeoBIT Tricks Consumers into Purchasing and Continuing to Use MacKeeper Through a Common Deceptive Scheme.

15.     ZeoBIT aggressively markets MacKeeper through online advertisements—available via search engines and affiliated websites—and on its own websites as software designed to enhance a Mac's performance and protect it from security and privacy threats.

16.     A consumer searching the World Wide Web for software to repair a poorly functioning Mac, remove harmful errors, or stop their computer from freezing will likely encounter ZeoBIT advertisements for MacKeeper substantially similar to those shown in Figures 1 and 2 on the following page.

*                    *                    *

---

[1]     Do You Love Your Mac, http://mackeeper.zeobit.com (last accessed April 28, 2014).

**Speed Up** Your **Mac** - Download Award-winning Utility
www.**mac**keeper.zeobit.com/
Make your **Mac** running Faster!
MacKeeper has 190 followers on Google+
Protect Data on your Mac - Clean your Mac - Speed up your Mac

(**Figure 1.**)

**Mac Speed Up** - **Mac**Keeper.ZeoBIT.com
**mac**keeper.zeobit.com/
MacKeeper - 911 For Your **Mac**. Optimize Your **Mac**. Download Today!
MacKeeper has 190 followers on Google+

(**Figure 2.**)

17.    ZeoBIT also uses targeted advertising to display MacKeeper ads specifically to Mac users browsing the World Wide Web. These pop-up advertisements describe MacKeeper's purported capabilities, including its supposed ability to remove errors, improve computer speeds, and enhance a Mac's security and general performance. (*See* <u>Figures 3–6</u>, showing screenshots of targeted online pop-up advertisements for MacKeeper.)



(**Figure 3.**)



(**Figure 4.**)



(**Figure 5.**)



(**Figure 6.**)

18.    Clicking on an advertisement or hyperlink for MacKeeper directs a consumer to a ZeoBIT website, where frightening "facts" like the following are presented about the dangers associated with prolonged use of a Mac:

- "The World Wide Web is the most vulnerable place for Mac security.";[2]

- "More than 30% of drive space on an average Mac is taken up by junk files.";[3] and

- "If you use your MacBook frequently and actively, be aware that over time more and more memory resources will be consumed, decelerating your MacBook. Slow Internet, increased login time, hard drive packed with junk - all of this leads to poor performance of your MacBook."[4]

19.    Regardless of where on the World Wide Web the consumer sees these statements, on that same page ZeoBIT invariably recommends downloading MacKeeper to repair and/or prevent the problems identified above. To further encourage the user to download the software, ZeoBIT details the purported benefits of using MacKeeper. Yet these descriptions misrepresent MacKeeper's true utility.

**A.    ZeoBIT uniformly misrepresents MacKeeper's utility.**

20.    In addition to explaining the supposed errors and security threats linked to using a Mac, ZeoBIT also provides a description of MacKeeper's utility. In particular, ZeoBIT expressly warrants on its websites that MacKeeper will perform the following tasks:

- "Protect [your] Mac from all kinds of Internet fraud";[5]

- "Clean your Mac quickly and safely";[6]

---

[2]    MacKeeper Includes the Following Security Features, http://mackeeper.zeobit.com/security (last accessed April 28, 2014).

[3]    Macbook Slow Internet Solutions, http://mackeeper.zeobit.com/macbook-pro-running-slow (last accessed December 29, 2012).

[4]    *See id.*

[5]    MacKeeper Includes the Following Security Features, http://mackeeper.zeobit.com/security (last accessed April 28, 2014).

[6]    MacKeeper Includes the Following Cleaning Utilities,

- "[F]ind[] and remove[] all junk files on your hard drive";[7]
- "Boost your login time";[8]
- "Speed up your Mac in 5 Minutes!";[9] and
- "[R]emove all harmful files that threaten your privacy."[10]

21.    But these representations do not accurately reflect MacKeeper's true capabilities. The truth is that, at its core, MacKeeper performs two main functions: (1) it provides limited antivirus and firewall protection and (2) deletes "superfluous" temporary files in whole and in part.[11] These operations do not come close to squaring with ZeoBIT's sweeping representations about MacKeeper's functionality. For instance, and as discussed more fully below, neither will appreciably improve a computer's speed or boot time, prevent the common causes of system freezes, nor otherwise provide the benefits ZeoBIT promises.

22.    Because of the impression created by ZeoBIT's assertions about MacKeeper's utility, consumers reasonably believe that the software detects and repairs errors and other Mac problems as advertised. To validate this belief, ZeoBIT designed MacKeeper to appear as though it performs actual analyses of consumers' Macs and report frightening results. But this too is just a part of ZeoBIT's scheme.

---

http://mackeeper.zeobit.com/cleaning (last accessed April 28, 2014).

[7]      *See id.*

[8]      MacKeeper Includes the Following Optimization Features, http://mackeeper.zeobit.com/optimization (last accessed April 28, 2014).

[9]      Speed up your Mac in 5 Minutes – Easy 3 Steps!, http://mackeepers.com (last accessed April 28, 2014).

[10]     Macbook Slow Internet Solutions, http://mackeeper.zeobit.com/macbook-pro-running-slow (last accessed December 29, 2012).

[11]     For completeness, in addition to these primary functions, MacKeeper also provides various file and system settings manipulation utilities. Like MacKeeper's main antivirus/firewall and temporary file deletion functions, these also do not significantly improve a computer's speed, boot time, or stability.

**B.**   **ZeoBIT intentionally designed MacKeeper to misreport benign issues as errors in order to induce consumers to purchase and continue to use the full version of its software.**

23.     After a consumer downloads and installs MacKeeper, the software immediately warns that a diagnostics scan should be performed to analyze the computer and "improve its performance." (*See* Figure 7 below, showing a screenshot of MacKeeper's initial user interface.)



(**Figure 7.**)

24.     After clicking the "System Scan" button (circled in red in Figure 7 above) and completing the diagnostic scan, MacKeeper displays a red banner at the top of the screen with an exclamation point and warning that thousands of detected issues are affecting "system performance" and "wasting disk space."  (*See* Figure 8 on the following page.) Three graphic meters also appear proximate to assigned categories ("Security Tools," "Junk Files," and "Optimization Tweaks") along with a "Level" indicating the condition of the Mac in each of these categories. *See id*. The "Level" meter for the various categories range from "Excellent" to "Critical" depending on the number of issues detected. *See id*.



(**Figure 8.**)

25.     Navigating to the "System Status" category in the software's navigation bar reveals gauges that supposedly represent the user's "Junk," "Security," and "Performance" levels—which range from red (critical) to green (excellent). (*See* Figure 9 below, showing a screenshot of the MacKeeper interface indicating that the user's "Junk" and "Security" levels are "Critical," with needles pointing in the red.)



(**Figure 9.**)

26.     Although these depictions of the Mac's condition appear ominous, the truth is that MacKeeper's alarmist scan results are simply scare tactics—common to this industry—used by ZeoBIT to frighten consumers into purchasing and continuing to use a full version of its software. For instance, with respect to the free trial version of MacKeeper, although ZeoBIT

claims that the 15-day trial version of the software is "fully functional," it only fixes a small number of detected issues. To completely remove the errors that MacKeeper claims are causing the Mac's "Critical" condition, the user must purchase the full version of the software. (*See* <u>Figure 10</u> below, showing MacKeeper reporting that the user's "system status" is "Critical" after fixing only 28 of the 1,412 issues detected, recommending purchasing the full version of the software to fix the remaining issues.)



(**Figure 10.**)

27.     A closer examination of MacKeeper's scanning engine reveals the free trial and full registered versions of the software actually detect issues on a user's Mac based on arbitrary metrics that cannot credibly be relied upon to assess the condition of their computer and also artificially inflate the number of issues detected, which causes the software to invariably report the Mac's "System Status" as "Critical." Ostensibly these representations scare the user into believing that the computer is damaged or at-risk, and that the purchase and continued use of MacKeeper is necessary to "fix" these problems and improve the system's security and operation.

28.     To illustrate this point, consider that each of the screenshots above (showing MacKeeper detecting thousands of issues and reporting "Critical" system statuses) are results

from scans conducted on a *brand new computer*. From this finding, it necessarily follows that under MacKeeper's reporting algorithm even brand new computers are in "Critical" condition and require repair by purchasing the full version. As a result, MacKeeper will report for virtually every user that their Mac is in "Critical" condition.

29.     To demonstrate, consider <u>Figure 11</u> below, which shows a list of innocuous cache files[12] detected and reported by MacKeeper as issues that require repair (and contribute to the system's "Critical" status).



(**Figure 11.**)

30.     These cache files are automatically generated in the normal course of a Mac's operations. For instance, the "com.apple.QuickLookDaemon" item circled in red in <u>Figure 11</u> and listed as harmful is typically created when a user opens a certain type of folder. Another entry detected as harmful, "com.zeobit.Mackeeper.Helper" (circled in green), is generated by *MacKeeper itself*. This means that, according to the software's algorithm, simply running the MacKeeper software itself will create harmful errors. Moreover, once these files are deleted, they

---

[12]     A "cache file" is a temporary file generated by system software or user software to speed up certain data-access operations.

are automatically regenerated. Thus, users are guaranteed to continually see the software "working" as it detects new false "errors."

31.     Not only is MacKeeper designed to artificially inflate the errors reported to users, the issues detected do not actually negatively impact a Mac's operations. For example, MacKeeper reports that the cache files discussed above, as well log files and system-related application data that comprise much of the "Junk Files" cause a Mac's "Critical" condition.[13] But the presence of these files has no appreciable impact on a computer, let alone the type of impact that would cause a "Critical" system status. The reason that MacKeeper reports these files as harmful is plain: the more errors the software detects, the easier it is to justify the alarmist meters and gauges showing that the user's Mac is damaged and needs repair.[14]

32.     Ultimately, a close examination of the MacKeeper software shows that the software does not perform any meaningful evaluation of files before characterizing them as harmful to a Mac's system status. By way of example, the following screenshots show MacKeeper detecting 250 fake, empty, and entirely innocuous log files and reporting that they were pushing a Mac's "Junk File" System Status to "Critical." (*See* Figures 12–14 on the following page: Figure 12 shows the 250 fake log files and Figures 13 and 14 show MacKeeper reporting the fake log files as causing a "Critical" system status under the "Junk" category).

---

[13]     "Log files" are records generated by system software or user software that detail some aspect of the history of the computer's operations.

[14]     Studying the results of a series of diagnostic scans performed using MacKeeper further reveals that a diagnostic scan that detects between 50 and 249 junk files results in a "Serious" System Status level, while 250 or more detected files results in a "Critical" System Status level. These metrics are wholly arbitrary.



**(Figure 12.)**



**(Figure 13.)**



**(Figure 14.)**

33.     To reiterate, the fake log files shown in Figure 12 are entirely innocuous log files that have no appreciable impact on the performance of a computer. The fact that MacKeeper detected them as harmful, however, confirms that the software does not actually assess the true nature (or severity) of items detected before characterizing them as harmful, or reporting that the issues affect system operations.

34.     Furthermore, even after purchasing the full, registered version of the software, MacKeeper continues (by design) to falsely detect and report errors in the same fashion. Presumably these techniques were intended to defraud users into believing that the continued use of the software is necessary to repair so-called errors and improve system performance, and that the software is functioning as advertised.

35.     Through the deceptive scheme described above, ZeoBIT has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that the purchase—typically for $39.95—and continued use of the MacKeeper software is necessary to "fix" these problems. But, because the software does not actually provide the benefits advertised, ZeoBIT does not deliver on its promises.

III.    **ZeoBIT Continues its Deceptive Practices in Disregard of the Changing Utility Software Industry.**

36.     Unfortunately for consumers, ZeoBIT is not alone in its use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like ZeoBIT and its competitors—have been called to account for profiting off of unknowing consumers.

37.     Indeed, numerous lawsuits have been filed against well-known competitors of ZeoBIT (e.g., AVG Technologies)—including several by Plaintiff's counsel here—which allege

similar claims related to the fraudulent design and marketing of utility software products. Several of those cases have resulted in classwide settlements and industry-shaping software modifications, which compel the implementation of far more transparent error detection and reporting procedures.

38.     Rather than follow suit and make the changes necessary to ensure that its software truthfully detects, reports, and repairs harmful errors, ZeoBIT has continued its unlawful business practices and profits from them to this day.

## IV.     Plaintiff Yencha's Experience.

39.     In late 2014, Plaintiff Yencha performed a search on the World Wide Web for software that would optimize and improve the performance of her Mac and that would otherwise eliminate privacy and security threats. One of the results displayed was a ZeoBIT advertisement for its MacKeeper software that was substantially similar to those depicted in Figures 1 and 2 above.

40.     After viewing Defendant's advertisement for MacKeeper, Yencha navigated to one of Defendant's websites (http://www.mackeeper.zeobit.com) and read express warranties about the software's utility, which were the same as (or substantially similar to) the representations described in Paragraph 20 and depicted in Figures 1–6 above.

41.     Relying on these representations—namely, ZeoBIT's claim that MacKeeper would "Clean [her] Mac quickly and safely," "[F]ind[] and remove[] all junk files on [her] hard drive," "Protect [her] Mac from all kinds of Internet fraud," "Increase [her] Security level," "Optimize [her] Mac," and otherwise "Speed up [her] Mac"—Yencha downloaded the free trial version of MacKeeper and then purchased the full version of the software for $39.95.[15]

---

[15]     In or around January 2014, Plaintiff Yencha was automatically charged $10.00 for

42.     Yet, the MacKeeper software that Yencha purchased did not—and could not—perform as advertised by ZeoBIT. In reality, ZeoBIT designed the software to arbitrarily and invariably return false errors as detailed in <u>Section II.B</u> above. As such, Yencha purchased a product under the falsely created belief that MacKeeper was capable of honestly and accurately assessing the condition of her Mac and was otherwise able to remove harmful errors and threats from her Mac as promised.

43.     But for ZeoBIT's descriptions about MacKeeper's utility, Yencha would not have purchased and continued to use the software.

## CLASS ALLEGATIONS

44.     **Class Definition**: Plaintiff Holly Yencha brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of herself and a class and subclass of similarly situated individuals, defined as follows:

> **Class**: All individuals and entities in the United States that have purchased MacKeeper.
>
> **Pennsylvania Subclass**: All individuals and entities in the Commonwealth of Pennsylvania that have purchased MacKeeper.

Excluded from the Class and Pennsylvania Subclass (collectively referred to as the "Class," unless otherwise indicated) are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released,

---

MacKeeper's "annual renewal."

and (5) the legal representatives, successors, or assigns of any such excluded person.

45.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, ZeoBIT has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through ZeoBIT's records.

46.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members, including:

a)       Whether Defendant intentionally marketed MacKeeper to deceive consumers into purchasing it;

b)       Whether Defendant intentionally misrepresented the functionality of the MacKeeper software;

c)       Whether Defendant's conduct described herein constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*.;

d)       Whether Defendant's conduct described herein constitutes fraudulent inducement;

e)       Whether Defendant's conduct described herein constitutes breach of contract; and

f)       Whether Defendant has been unjustly enriched as a result of its conduct described herein.

47.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of ZeoBIT's uniform wrongful

conduct during transactions with Plaintiff and the Class.

48.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and ZeoBIT has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

49.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because ZeoBIT has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. ZeoBIT's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on ZeoBIT's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. ZeoBIT has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

50.     **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by ZeoBIT's wrongful conduct.

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from ZeoBIT's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 P.S. §§ 201-1, *et seq*.
(On Behalf of Plaintiff and the Pennsylvania Subclass)**

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     ZeoBIT engaged in a deceptive and misleading course of conduct intended to deceive and significantly mislead consumers into purchasing its MacKeeper software. This course of conduct, and specifically ZeoBIT's marketing practices, constitute unconscionable commercial practices, deception, fraud, false promises, false pretenses, and/or misrepresentations that violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*. ("UTPCPL").

54.     ZeoBIT is a "person" as defined by Section 201-2(2) of the UTPCPL.

55.     ZeoBIT is/was engaged in "trade" and "commerce" as defined by Section 201-2(3) of the UTPCPL.

56.     As described herein, ZeoBIT engaged in fraudulent and/or deceptive conduct that

created the likelihood of confusion or misunderstanding, as defined the UTPCPL, by, *inter alia*: (i) publicly misrepresenting MacKeeper's functionality, including through false and misleading assertions like those listed in Paragraphs 16–18 and 20, and otherwise described throughout Section II of this Complaint; (ii) using these misrepresentations to induce consumers into purchasing MacKeeper; and (iii) selling a full version of the software that doesn't function as advertised, as described in Section II.B. *See* 73 P.S. § 201-2(4)(xxi).

57.     Specifically, ZeoBIT affirmatively represented to Plaintiff and the Pennsylvania Subclass that MacKeeper would honestly and accurately scan their Macs for harmful problems, increase computer speed and stability, and protect their Macs from security and privacy threats as shown by ZeoBIT's statements in Paragraphs 16–18 and 20, and otherwise described in Section II above.

58.     ZeoBIT's representations were, in fact, false. MacKeeper does not (and cannot) actually perform the level of utility promised by ZeoBIT through its marketing materials.

59.     Furthermore, the *only reason* that consumers would purchase MacKeeper is to repair harmful errors, improve computer performance, and eliminate privacy and security threats as advertised by ZeoBIT.

60.     Reasonable consumers are likely to be, and Plaintiff and the Pennsylvania Subclass were, deceived by ZeoBIT's misrepresentations about the full scope and benefits provided by MacKeeper.

61.     ZeoBIT's deceptive and misleading actions were perpetuated while marketing and selling its MacKeeper software product, and therefore occurred during the course of its business practices.

62.     ZeoBIT's fraudulent and unfair conduct directly and proximately caused Plaintiff

and the Pennsylvania Subclass actual monetary damages in the form of the purchase price (or some portion thereof) that they paid for MacKeeper (typically $39.95).

63.     Accordingly, and pursuant to 73 P.S. § 201-9.2(a), Plaintiff, on behalf of herself and the Pennsylvania Subclass, seeks: (i) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Pennsylvania Subclass by requiring ZeoBIT to cease the unlawful activities discussed herein; (ii) actual damages or statutory damages of one hundred dollars ($100), whichever is greater; and (iii) reasonable costs and attorneys' fees. Plaintiff further alleges that ZeoBIT's conduct and misrepresentations were made with malice and in conscious disregard of Plaintiff's and the Pennsylvania Subclass's rights, thereby entitling them to treble damages pursuant to 73 P.S. § 201-9.2(a).

**SECOND CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class)**

64.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65.     As depicted in Figures 1–6, Paragraphs 16–18 and 20, and throughout all Counts of this Complaint, ZeoBIT has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

66.     To induce Plaintiff and the Class into purchasing MacKeeper, ZeoBIT affirmatively represented to Plaintiff and the Class that MacKeeper provides a certain level of utility. Specifically, ZeoBIT represented to Plaintiff and the Class that MacKeeper would honestly and accurately scan their computers for harmful problems, increase computer performance, and protect their Macs from security and privacy threats, as described in Section II.

67.     ZeoBIT's affirmative representations regarding MacKeeper were, in fact, false. In particular, MacKeeper does not—and cannot—improve a computer's condition in the manner described by ZeoBIT. Likewise, ZeoBIT's programmatic design of its software is deceptive

because it doesn't meaningfully evaluate a Mac's condition and instead was engineered to invariably report that the computer is at-risk and needs repair.

68.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

69.     As MacKeeper's developer, ZeoBIT knew that its representations about MacKeeper's utility were false. ZeoBIT intentionally designed its public representations to mislead consumers about MacKeeper's utility.

70.     ZeoBIT also intentionally made these misrepresentations to induce Plaintiff and the Class to rely on them and purchase MacKeeper.

71.     Average consumers lack the requisite technical expertise to independently gauge MacKeeper's underlying functionality, and thus take ZeoBIT's statements regarding its utility at face value. Plaintiff and the Class justifiably relied upon ZeoBIT's misrepresentations by purchasing MacKeeper. They would not have purchased MacKeeper but for its misrepresentations.

72.     By using false and deceptive marketing tactics (and designing MacKeeper to falsely generate reports about a Mac's condition), ZeoBIT has engaged in fraudulent practices designed to mislead and deceive consumers into purchasing (and continuing to use) MacKeeper.

73.     As a result of their reasonable reliance on ZeoBIT's misrepresentations, Plaintiff and the Class have been damaged in the amount of the difference between the purchase price they paid for MacKeeper (typically $39.95) and its true value, as reflected by the software's actual utility.

74.     Plaintiff therefore prays for relief in the amount of the difference between the

purchase price she and the Class paid for MacKeeper and its actual value. Plaintiff further alleges that ZeoBIT's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiff's and the Class's rights, thereby entitling them to punitive damages against ZeoBIT in an amount sufficient to deter such conduct in the future.

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

75.     Plaintiff incorporates the foregoing allegations as if fully alleged herein.

76.     Plaintiff and the members of the Class entered into agreements with ZeoBIT whereby ZeoBIT agreed to sell, and Plaintiff and the members of the Class agreed to purchase, MacKeeper, which was purportedly designed to honestly and accurately scan Macs for harmful problems, increase a Mac's speed and stability, protect users' computers from security threats, and otherwise perform the beneficial tasks depicted in <u>Figure 1–6</u> and described in <u>Section II</u>. Based on the foregoing offer and representations, Plaintiff and the Class agreed to purchase MacKeeper.

77.     Plaintiff and the Class paid, and ZeoBIT accepted, MacKeeper's purchase price (typically $39.95), and therefore performed their obligations under the contracts.

78.     As such, ZeoBIT voluntarily assumed a contractual obligation to provide Plaintiff and the Class with software that would perform the benefits discussed in Paragraphs 16–18 and 20, and as otherwise described in <u>Section II</u> above, honestly and accurately scan Macs for harmful problems, improve a Mac's speed and stability, and protect their computers from security threats.

79.     ZeoBIT breached its contracts with Plaintiff and the Class by intentionally designing the full version of MacKeeper to mischaracterize the true condition of computers and further by failing to provide software that performed the tasks depicted in <u>Figures 1–6</u> and

otherwise described in <u>Section II</u>. These obligations were material terms of the agreements.

80.     ZeoBIT did not honor these obligations because MacKeeper could not increase the speed, performance, and stability of Plaintiff's and the Class's Macs, nor could it protect against privacy risks or remove harmful errors. That is, MacKeeper could not actually perform the beneficial tasks that it represented it would.

81.     The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, including in the form of the purchase price (or at least a portion thereof) of MacKeeper, because they purchased a product that could not perform as ZeoBIT promised, and therefore lacks the utility contracted for.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
***In the Alternative to Breach of Contract***
**(On Behalf of Plaintiff and the Class)**

82.     Plaintiff incorporates the allegations in Paragraphs 1–74 as if fully set forth herein.

83.     If the Court finds Plaintiff's and the Class's contracts with ZeoBIT invalid, non-existent, or otherwise unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

84.     Plaintiff and the Class have conferred a benefit upon ZeoBIT in the form of the money ZeoBIT charged and collected from them for the purchase of the full version of the MacKeeper software, which did not and could not perform as ZeoBIT promised.

85.     ZeoBIT appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

86.     Under principles of equity and good conscience, ZeoBIT should not be permitted to retain the monies belonging to Plaintiff and the Class that it unjustly received as a result of its

wrongful conduct described herein.

87.     Accordingly, Plaintiff, on behalf of herself and the other members of the Class, seeks restitution and disgorgement of all amounts by which ZeoBIT has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Holly Yencha, on behalf of herself and the Class, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class and Pennsylvania Subclass defined above, appointing Plaintiff Yencha as representative of the Class and Pennsylvania Subclass, and appointing her counsel as Class Counsel;

B.     Declaring that ZeoBIT's actions, as set out above, constitute (i) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*., (ii) fraudulent inducement, (iii) breach of contract, and (iv) unjust enrichment (in the alternative to breach of contract);

C.     Awarding damages, including statutory and treble damages where applicable, to Plaintiff and the Class and Pennsylvania Subclass in an amount to be determined at trial;

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class and Pennsylvania Subclass, including, *inter alia,* an order: (i) prohibiting ZeoBIT from engaging in the wrongful and unlawful acts described herein, (ii) requiring ZeoBIT to disclose and admit the wrongful and unlawful acts described herein, and (iii) requiring ZeoBIT to fully disclose the true functional capability of MacKeeper in the future;

E.     Awarding Plaintiff and the Class and Pennsylvania Subclass their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class and Pennsylvania Subclass pre- and post-

judgment interest, to the extent allowable;

      G.    Entering such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class and Pennsylvania Subclass; and

      H.    Awarding such other and further relief as the Court deems reasonable and just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**HOLLY YENCHA**, individually and on behalf of all others similarly situated,

Dated: ᵗMay 6, 2014

By: /s/ William R. Caroselli
     One of Plaintiff's Attorneys

William R. Caroselli (PA 00452)
wcaroselli@cbmclaw.com
CAROSELLI BEACHLER MCTIERNAN & CONBOY LLC
20 Stanwix Street, 7th Floor
Pittsburgh, Pennsylvania 15222
Tel: 412.391.9860
Fax: 412.391.7453

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney C. Booth*
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice* admission to be sought.